IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| ROBERT R. PORTER, | ) | | |
| | ) | | |
| Plaintiff, | ) | Civil Action No. 04-1228 | |
| | ) | | |
| v. | ) | Judge Thomas M. Hardiman/ | |
| | ) | Magistrate Judge Lisa Pupo | |
| Correction Officer A. KING, Correc- | ) | Lenihan | |
| tion Officer ORENBAUN, Correction | ) | | |
| Officer CONNOR, MARK CAPOZZA, Unit | ) | | |
| Manager, Sergeant DURCO, THE LIEU- | ) | | |
| TENANT and THE SERGEANT, | ) | | |
| | ) | | |
| Defendants | ) | RE   Doc. 28-1. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### RECOMMENDATION

It is recommended that the Defendants' Motion to Dismiss be denied.

### REPORT

Robert R. Porter (Plaintiff) is currently incarcerated in the State Correctional Institution at Camp Hill (SCI-Camp Hill), serving a state sentence of 2 to 10 years.  Pursuant to 42 U.S.C. § 1983, he has filed a civil rights lawsuit against the seven defendants who were allegedly involved either personally or as supervisors in an alleged assault that took place on September 16, 2002 and another incident on September 22, 2002.

### A. Relevant Procedural History

Plaintiff is proceeding in forma pauperis, Doc. 12, and filed both a complaint, Doc. 3, and an amended complaint, Doc. 8, which,

together, form the operative complaint in this suit.  The Defendants,
all represented by the same attorney, filed a motion to dismiss, Doc.
28, and a brief in support.  Doc. 29.  The Defendants appended
evidentiary materials to the motion, and requested the court to
convert the motion into a motion for summary judgment.  The Court did
not enter an order notifying the parties that it would consider the
motion as one requesting summary judgment and so, the Court will treat
the motion as one filed pursuant to Fed.R.Civ.P. 12(b)(6). See, e.g.,
Hemingway v. Falor, __ Fed.Appx. __,  2006 WL 2786866, *3 (3d Cir.
2006)("If a motion to dismiss is converted into a motion for summary
judgment, the court must provide notice and an opportunity to oppose
the motion."); Sigal v. Nash-Finch Co., 168 Fed.Appx. 364, 365 (11th
Cir. 2006)("Tripp and Sigal appealed the district court's grant of
summary judgment and we reversed. The district court had erred by
converting Nash-Finch's motions to dismiss into motions for summary
judgment without providing the parties with the required ten days
notice. . . ."); Greer v. Smith, 59 Fed.Appx. 491, 492 (3d Cir.
2003)("the [District] Court erred by granting the defendants' motion
to dismiss for failure to exhaust solely on the basis of
representations made in an affidavit submitted by the defendants.
Subject to a few narrow exceptions not applicable in this case, Rule
12(b) of the Federal Rules of Civil Procedure requires a District
Court to convert a motion to dismiss to a motion for summary judgment
if the Court considers materials outside the plaintiff's pleading,

2

such as the affidavit relied upon in this case.")(footnote omitted).[1] Plaintiff filed two briefs in opposition to the Defendants' motion to dismiss.  Doc. Nos. 32 & 34.

## B. Applicable Legal Principles

The court is treating Defendants' Motion as a motion seeking dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6).  In that motion, the Defendants argue that the complaint fails to state a claim upon which relief can be granted.  The Court of Appeals for the Third Circuit announced the standard of review applicable to motions to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6):

> [Courts] must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). We may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  It is the defendant

---

[1]  The Defendants point out that courts may take judicial notice of exhibits attached to the complaint and invite this court to take notice of the grievance Plaintiff attached to Doc. 3.  See Doc. 29 at 5, n.1.  Even if the court did so, it would not be sufficient to grant the motion to dismiss on the basis of Plaintiff's failure to exhaust.  At most, taking judicial notice of the grievance form establishes that Plaintiff filed the first step in the grievance process.  It fails to establish that he did not complete the exhaustion requirement.  As an affirmative defense, Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002)(exhaustion is an affirmative defense which means defendants have burden of proof to establish non-exhaustion), Plaintiff was under no obligation to append anything to the complaint, yet alone the evidence that he completed all three steps of the grievance process.

who bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted.  <u>Gould Electronics, Inc. v. United States</u>, 220 F.3d 169, 178 (3d Cir. 2000).  Moreover, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case[.]"  <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 511 (2002).  <u>See also</u> <u>Nix v. Welch & White, P.A.</u>, 55 Fed.Appx. 71, 72 (3d Cir. 2003)("a complaint generally need not allege every element of a plaintiff's claim").  Furthermore, "[b]ecause 'there are no special pleading rules for prisoner civil rights cases,' a complaint should not be dismissed if it specifies 'the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.'" <u>Perry v. Oltmans</u>, 106 Fed.Appx. 476, 479 (7th Cir. 2004).  With these standards in mind, we evaluate the complaint and the motion to dismiss.

**C. Discussion**

The complaint alleges that on September 16, 2002, Plaintiff was assaulted by Defendants King and Orenbaun when they argued with Plaintiff who was in his cell and they were standing outside of it.  Doc. 3 at unn. pp. 2-3.  These two defendants then allegedly told Defendant Connor to open Plaintiff's cell door.  Defendant Connor complied with this request, apparently knowing that they wanted to assault Plaintiff.[2]

---

[2]   The Court says "apparently" because it is not clear from the complaint whether Plaintiff alleges that Connor knew that Defendants King and Orenbaun wanted to assault Plaintiff and he

The next incident Plaintiff complains of occurred on September 26, when Officer King, who was allegedly prohibited from coming on Plaintiff's housing pod pending the investigation of the alleged assault on September 16, 2002, nevertheless came onto the pod to escort Plaintiff to the law library.  Plaintiff was handcuffed by Defendant King to be escorted to the Library.  Doc. 3 at unn. pp. 6-7. Plaintiff allegedly informed Defendant Sergeant Durco that Defendant King was not permitted to touch Plaintiff but Defendant Durco allegedly informed Plaintiff that Plaintiff would either permit himself to be escorted by Defendant King or Plaintiff would not be going to the law library.  Plaintiff acquiesced in being escorted by Defendant King.  Doc. 8 at unn. pp. 2-3.  Apparently while being escorted by Defendant King, another incident occurred, the nature of which is not clear from the complaint but attached to the complaint is a misconduct report concerning Plaintiff allegedly threatening Sergeant Durco.  In Plaintiff's response to the misconduct, he alleges that Defendant King apparently pulled on the security tether that was attached to Plaintiff and that he tightened the handcuffs on Plaintiff, thereby utilizing excessive force. Doc. 3 at unn. p. 14.

In addition, Plaintiff alleges that Defendants Capozza, as the Unit Manager of Plaintiff's housing pod, and Defendant Durco as the

---

opened the door to facilitate the assault or whether he simply
knew that he should not have opened the cell door without
Plaintiff's hands being handcuffed first, which allegedly
constitutes a violation of policy.  Doc. 3 at unn. p. 5, ¶ 8.

Sergeant, as well as the Defendants identified in the caption solely as the "Lieutenant" and the "Sergeant" are all liable because they were supervisors of Defendants King and Orenbaun, and they failed to properly and adequately supervise King and Orenbaun, which caused Plaintiff's two assaults. Doc. 8.  Although not clear, it appears that Plaintiff is alleging liability against Defendants Capozza and Durco only for the September 26 incident.  Doc. 8 at unn. pp. 2-3, ¶¶ 2-6. It further appears that Plaintiff is alleging liability against the Defendants identified only as "the Lieutenant" and "the Sergeant" solely for the September 16 incident.  Doc. 8 at unn. Pp. 3-4, ¶¶ 7-9.

Plaintiff alleges that the foregoing acts state a claim for violating his Eighth Amendment right to be free of cruel and unusual punishment.

The first defense Defendants raise is that Plaintiff failed to exhaust his administrative remedies.  However, in answer to a question on the form complaint of what steps did Plaintiff take to exhaust his administrative remedies Plaintiff alleges that he "filed a grievance and other relevant circumstances,". Doc. 3 at unn. p. 8.  In addition, in his Brief in Opposition to the motion Plaintiff alleges that he gave the grievance to his attorney, Harry Cancelmi, and seems to imply that he relied on Attorney Cancelmi to pursue the matter further. Doc. 32 att p. 2.  At this procedural juncture this is sufficient to prevent the court from finding, based solely on the operative complaint (and excluding evidentiary materials relied upon by the

Defendants) that the Defendants have met their burden to show that the complaint fails to state a claim upon which relief can be granted. There are a set of facts, consistent with those alleged in the complaint, i.e., Plaintiff did exhaust his administrative remedies, by which Plaintiff could be entitled to relief. Doe v. Delie, 257 F.3d at 313.[3]

Defendants next defense is that the complaint fails to state a claim against Defendant King for the September 26, 2002 incident because King had nothing to do with the filing of the allegedly false disciplinary charge that lead to Plaintiff suffering a 30 day disciplinary custody sanction. The Defendants read the allegations of the operative complaint to be limited to a claim regarding the filing of a false disciplinary report. Doc. 29 at 6-7. To the extent that the operative complaint alleges merely that Defendant King filed a false disciplinary report against Plaintiff, the court would agree

---

[3] If the Defendants choose to file a motion for summary judgment and again want to raise the issue of exhaustion, it would be helpful if, in that motion, the Defendants would include a copy of the version of the Administrative remedy policy that was operative at the time Plaintiff would have had to exhaust. In addition, it would be helpful if they included all relevant documents, including Plaintiff's appeal to the Superintendent and the Superintendent's response and an attestation to the effect that the grievance records are kept in the ordinary course of the Department of Corrections' business and that all copies of documents submitted by the Defendants that are related to Plaintiff's grievance and appeals thereof are true and correct copies of the originals. In addition, the affidavit should be sworn to or declared under penalty of perjury in conformity with 28 U.S.C. § 1746, and not under 18 Pa.C.S.A. § 4904 as was the present affidavit.

that such a claim fails to state a claim upon which relief can be granted. <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); <u>Williams v. Reynolds</u>, 198 F.3d 248 (Table), 1999 WL 1021856, at *2 (6th Cir. 1999) ("Williams's claims against Ellison fail to state an Eighth Amendment claim because neither verbal harassment or threats nor **the filing** of a false misconduct report constitute punishment within the context of the Eighth Amendment.")(emphasis added); <u>Person v. Campbell</u>, 182 F.3d 918 (Table) 1999 WL 454819, *1 (6th Cir. 1999)("the filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."); <u>Nelson v. Commonwealth of Pennsylvania</u>, No. Civ. A.97-6548, 1997 WL 793060, at *3 (E.D. Pa. Dec. 9, 1997) ("The filing of a false or unfounded misconduct charge against an inmate does not constitute a deprivation of a constitutional right.").

However, the court does not read the complaint to contain a claim based on King allegedly filing a false disciplinary report but reads the operative complaint to be alleging an Eighth Amendment violation based on Defendant King's tightening of the handcuffs and pulling on the tether. <u>See</u> Doc. 3 at unn. p. 2, ¶ III (citing Eighth Amendment as the law alleged to have been violated by Defendants); <u>Id</u>. at unn. p. 7 ("Officer King, was allowed to 'handcuff' this inmate, anyways,

and an incident occurred, resulting in further injury . . . ."); <u>Id</u>. at unn. p. 18 ("Sgt Durco allowed COI [i.e., Corrections Officer I] King to escort me to the law library by holding the security rope that is connected to the handcuffs, COI King then pulled on (said) rope, causing me to be agitated."); Doc. 32-1 at 3 ("Plaintiff asserts . . . that Defendant A. King pulls on the security rope and tightens the handcuffs . . ."). <u>Cf</u>. <u>Kopec v. Tate</u>, 361 F.3d 772, 777 (3d Cir. 2004)(holding that officer used excessive force in violation of the Fourth Amendment by placing excessively tight handcuffs on the plaintiff and refusing to loosen them for ten minutes).  These allegations of the complaint are sufficient to survive a motion to dismiss for failure to state a claim.

The last defense raised by Defendants is that Plaintiff failed to adequately allege personal involvement in the asserted constitutional violations on the parts of Defendants Durco, Capozza and Connor and that Plaintiff seeks to hold them liable merely upon a theory of respondeat superior.  <u>See</u>, <u>e.g.</u>, <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1981)(requiring personal involvement for liability to attach under Section 1983 cases).  "Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way." <u>McClelland v. Facteau</u>, 610 F.2d 693, 695 (10th Cir.

1979).[4]  Hence, the only way a defendant can be liable under Section 1983 is based upon facts showing that the defendant was personally involved in depriving the civil rights of the plaintiff, i.e., personally engaged in wrongdoing.  However, contrary to Defendants' contentions, a reading of the operative complaint makes clear that Plaintiff is not seeking to hold these supervisory Defendants liable based merely on their relationship to underlings who engaged in wrongdoing.  Rather, he seeks to hold them liable for their own wrongdoing, to wit, that they knew that Plaintiff was about to be assaulted and that they failed to act to protect Plaintiff, or that they acted with deliberate indifference to Plaintiff's safety.   This is sufficient at this stage of the case.[5]

--------

[4] While it is true that Plaintiff uses the phrase "respondeat superior," use by a pro se prisoner of such language cannot be dispositive as to the question presented by the motion to dismiss, namely, whether, under any set of facts that can be proved consistent with the allegations of the complaint, relief could not be granted.  This is so because in addition to using the phrase "respondeat superior," the allegations of the complaint reveal potential wrongdoing on the part of the supervisors themselves in terms of their alleged failures to supervise the other defendants.

[5] Defendants argue in this case, and have done so in several other cases, that "a supervisor has 'no affirmative duty to train, supervise or discipline so as to prevent' unconstitutional conduct."  Doc. 29  at p. 8 (quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir.  1990).  Defendants cite to Brown as if it held that a supervisor has no affirmative duty to train, supervise or discipline; Brown did not hold such.  In Brown, the court was addressing a qualified immunity defense for actions taken in 1985 and the Brown court concluded that, at that time, i.e., 1985, the law was not clearly established that supervisors had an affirmative obligation.  See, e.g., Rosenberg v. Vangelo, 93 Fed.Appx. 373, 379 (3d Cir. 2004).  However, at

Accordingly, the Defendants' motion to dismiss should be denied.

**CONCLUSION**

In accordance with the Magistrates Act, 28 U.S.C. §636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

s/Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

Dated: October 24, 2006

cc:  Honorable Thomas M. Hardiman
     United States District Judge

     Robert R. Porter
     DU-6434
     SCI Camp Hill
     P.O. Box 200
     Camp Hill, PA 17001

     Counsel of record.

---

the time Brown was decided, i.e., in 1990, an affirmative obligation on supervisors to train, supervise and discipline was clearly established.  Rosenberg, 93 Fed.Appx. at 379. Accordingly, Defendants' reliance on Brown is misplaced and the failure to train, supervise or discipline **may** constitute sufficient personal participation to state a claim, if other conditions are met, making this issue of supervisory liability based on supervisory wrongdoing more properly addressed in a summary judgment motion.  See, e.g., Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001)(listing conditions required to impose supervisory liability).

11