IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT R. PORTER,                  )
                                   )
                Plaintiff,          ) Civil Action No. 04-1228
                                   )
          v.                       ) District Judge Nora Barry Fischer
                                   ) Magistrate Judge Lisa Pupo
Correction Officer A. KING;        ) Lenihan
Correction Officer ORENBAUN;       )
Correction Officer CONNOR;         )
MARK CAPOZZA, Unit  Manager;       )
Sergeant DURCO; Lieutenant         )
BALL; and Sergeant NEGLEY,         )
                                   )
                Defendants.         )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that the Defendants' Motion for Summary Judgment (doc. no. 70) be granted.

**II.    REPORT**

Robert R. Porter (Plaintiff) is currently incarcerated in the State Correctional Institution at Camp Hill (SCI-Camp Hill), serving a state sentence of 2 to 10 years.  Pursuant to 42 U.S.C. § 1983, he has filed a civil rights lawsuit against seven defendants who allegedly were involved either personally or as supervisors in an alleged assault that took place on September 16, 2002 and another incident on September 22, 2002.  Plaintiff is proceeding in forma pauperis, Doc. 12, and filed both a complaint, doc. no. 3, and an amended complaint, doc. no. 8, which, together, form the operative complaint in this suit.  On May 7, 2007, Defendants filed a Motion

for Summary Judgment (doc. no. 70).  Plaintiff has filed a Response
to the motion (doc. no. 73), and a brief in support (doc. no. 74).
For the reasons that follow, Defendants' Motion should be granted.

## A. Standard of Review

Defendants have filed a Motion for Summary Judgment
pursuant to Fed. Rule Civ. Proc. 56.   Summary judgment is
appropriate if, drawing all inferences in favor of the non-moving
party, ". . . the pleadings, depositions, answers to interrogatories
and admissions on file, together with the affidavits, if any, show
that there is no genuine issue of material fact and the movant is
entitled to judgment as a matter of law."  Fed. Rule Civ. Proc.
56(c).  Summary judgment may be granted against a party who fails to
adduce facts sufficient to establish the existence of any element
essential to that party's case, and for which that party will bear
the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S.
317, 325 (1986).  The moving party bears the initial burden of
identifying evidence that demonstrates the absence of a genuine
issue of material fact.  Once that burden has been met, the non-
moving party must set forth ". . . specific facts showing that there
is a genuine issue for trial . . ." or the factual record will be
taken as presented by the moving party and judgment will be entered
as a matter of law.  Matsushita Elec. Ind. Co. v. Zenith Radio
Corp., 475 U.S. 574 (1986).  The non-moving party must go beyond the
pleadings and show specific facts by affidavit or by information

2

contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. <u>Celotex Corp</u>, 477 U.S. at 322. Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." <u>Firemen's Ins. Co. of Newark, N.J. v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," *i.e.*, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 247-249. The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### B. <u>Plaintiff's Allegations</u>

Plaintiff first alleges that he was assaulted on September 16, 2002 by defendants King and Orenbaun at and near his cell in the Special Management Unit (SMU) at SCI-Greene. Specifically, Plaintiff states that King and Orenbaun approached Plaintiff's cell while it was locked and he was uncuffed and started arguing with him. He claims that earlier in the day, he, King, and Orenbaun had been arguing on the way back from Plaintiff's shower. Plaintiff

states that Orenbaun called to the officer in the control bubble, defendant Connor, to open Plaintiff's cell door and defendants Orenbaun and King began punching and kicking Plaintiff. Plaintiff contends that defendant Connor knew that he was opening Plaintiff's cell in order to enable defendants Orenbaun and King to assault Plaintiff and that defendant Connor then witnessed the assault that followed.

Plaintiff alleges that after the initial assault in the doorway of his cell, he was then pulled out into the common area by defendants Orenbaun and King who continued to punch and kick him. At some point, Plaintiff contends that defendant Orenbaun went down on his knees and grabbed Plaintiff's penis and testicles, squeezing them until Plaintiff fell to the floor. Plaintiff states that, as he fell to the floor, he struck the left side of his face on a nearby cell door and was momentarily knocked unconscious. Plaintiff states specifically that defendant King kicked him while he was down on the floor and, at some point, had pulled out a piece of his hair. Plaintiff contends that, after he fell to the ground, defendants King and Orenbaun dragged him back to his cell.

Plaintiff subsequently was escorted to the infirmary and examined by medical staff. Plaintiff contends that he was later issued a "falsified misconduct" by defendant King accusing him of being the aggressor in the September 16, 2002 events. This misconduct was dismissed by the hearing examiner and never

4

re-issued.

The next incident Plaintiff complains of occurred on September 26, 2002, when Officer King, who allegedly was prohibited from coming onto Plaintiff's housing pod pending the investigation of the alleged assault on September 16, 2002, nevertheless came onto the pod to escort Plaintiff to the law library. Plaintiff was handcuffed by Defendant King to be escorted to the library. Plaintiff informed Defendant Sergeant Durco that Defendant King was not permitted to touch Plaintiff but Defendant Durco allegedly informed Plaintiff that Plaintiff would either permit himself to be escorted by Defendant King or Plaintiff would not be going to the law library. Plaintiff acquiesced in being escorted by Defendant King. Apparently while being escorted by Defendant King, another incident occurred, the nature of which is not clear from the complaint but attached to the complaint is a misconduct report charging Plaintiff with threatening and employee and using obscene language. In Plaintiff's response to the misconduct, he alleges that Defendant King apparently pulled on the security tether that was attached to Plaintiff and that he tightened the handcuffs on Plaintiff, thereby utilizing excessive force.

In addition, Plaintiff alleges that Defendants Capozza, as the Unit Manager of Plaintiff's housing pod, and Defendant Durco as the Sergeant, as well as the supervisors of Defendants King and Orenbaun, failed to properly and adequately supervise King and

5

Orenbaun, which caused Plaintiff's two assaults.

## C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff's claims invoke liability under the Eighth Amendment, which protects individuals against the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.  In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns.  A prison official violates the Eighth Amendment only when two requirements are met.  The inmate must show that:  1) he

6

suffered a risk of "serious" harm; and 2) prison officials showed
"deliberate indifference" to such risk. *Id.*, 511 U.S. at 834. The
first element is satisfied when the alleged "punishment" is
"objectively sufficiently serious." *Id.* In determining whether a
prisoner has alleged a risk that is objectively serious, a court
must consider not only the seriousness of the potential harm and the
likelihood that the harm will actually occur, but evidence that
unwilling exposure to that risk violates contemporary standards of
decency. In other words, the prisoner must show that the risk of
which he complains is not one that today's society chooses to
tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993). The second
criterion, deliberate indifference, requires an inmate to show that
the prison official had a sufficiently culpable state of mind.

Plaintiff's claims allege excessive force. The Cruel and
Unusual Punishments Clause of the Eighth Amendment protects inmates
against the application of excessive force by correctional officers.
*See* Whitley v. Albers, 475 U.S. 312, 318-19 (1986). In an excessive
force claim, the core judicial inquiry is "whether force was applied
in a good faith effort to maintain or restore discipline or
maliciously and sadistically for the very purpose of causing harm."
Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to this
inquiry include: the need for application of force; the
relationship between that need and the amount of force used; the
threat reasonably perceived by the responsible officials; and any

7

efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (citations omitted).  The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis.  *Id*.

In an excessive force claim under the Eighth Amendment, summary judgment in favor of defendants is appropriate where the evidence, viewed in the light most favorable to the plaintiff, does not support "a reliable inference of wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986).  This Court must determine if, when viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude by a preponderance of the evidence that Defendants had malicious and sadistic intent to cause harm to Plaintiff.

**D. The September 16, 2002 Incident**

1.   The need for the application of force

Defendants have submitted substantial evidence to show that the events of September 16, 2002, were contrary to those alleged by Plaintiff. Specifically, Defendants assert that on September 16, 2002, at approximately 3:15 PM. Plaintiff Porter was given a direct order to finish his shower which had lasted twenty minutes.  As Defendants King and Orenbaun were escorting Plaintiff back to his cell, Defendant King admonished Plaintiff for taking too long in the shower.  At that point, Plaintiff turned aggressively toward the officers and the officers placed him against the wall to

8

be controlled.  When he was taken to his cell, Plaintiff attempted to kick and head butt the officers. He was then placed in the cell where his leg irons were removed with the use of a tether (doc. no. 70-3, p. 4).

With the exception of his self-serving statement, Plaintiff has not submitted any evidence to contradict the evidence submitted by defendants.  By his account, Defendants King and Orenbaun dragged him out of his cell and beat him for three or four minutes outside of his cell in the hall of his pod and that they bashed his head into the metal sliding panel of his cell door. Plaintiff has not averred that there were no other individuals present during this activity, yet he has not submitted one affidavit from any other guard or inmate to substantiate his claim.

    2.   <u>The relationship between the need for force and the amount of force used</u>.

Defendants assert that they used only the amount of force necessary to control Plaintiff to get him back to his cell after his shower.  The medical records support Defendants' evidence as to the events that occurred on September 16, 2002.  Again, Plaintiff has not submitted any evidence to the contrary as is his burden in defeating a motion for summary judgment.

    3.   <u>The extent of Plaintiff's injuries.</u>

The degree of the resulting injury can be highly relevant to the determination of the unreasonableness of the force used. <u>Brooks v. Kyler</u>, 204 F.3d 102, 108 (3d Cir. 2002). Here, the record

evidence simply does not support an excessive force claim as alleged by Plaintiff.  With respect to the September 16, 2002 incident, Plaintiff claims that Defendants King and Orenbaun punched and kicked him for three to four minutes in a "free for all battle" (doc. no. 74, p. 2).  He further claims that Defendant Orenbaun squeezed his testicles until he screamed in pain and fell to the floor, hit his head on the sliding metal track of the cell door hard enough that he momentarily passed out.  Finally, he claims that Defendants King and Orenbaun pulled out chunks of his hair and dragged him back to his cell (doc. no. 74, p.3).

Plaintiff's medical records specifically provide that Plaintiff was examined within four hours of the event in question and no injuries of any kind were found (doc. no. 70-3, p.6).  This document is signed by non-defendant R.N. Marilyn Jones.  While Plaintiff claims that this document is forged; he has not submitted any evidence to substantiate this assertion.  Specifically, he has not filed any statement from Nurse Jones stating the medical records submitted by Defendants are forged; nor has he submitted any statements from the medical personal he claims examined him and noted swelling and bruising.

The Court is aware that claims of excessive force in the prison context are common and need not be supported by extensive injury.  However, the Supreme Court has never held that a prisoner need not demonstrate <u>any</u> evidence of harm in order to defeat summary

judgment.  While a plaintiff need not prove a certain arbitrary quantity of injury in excessive force cases, the Supreme Court explained in Hudson as follows.

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See* Johnson v. Glick, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' " Whitley, 475 U.S., at 327 (quoting Estelle, *supra*, 429 U.S., at 106) (internal quotation marks omitted).

Hudson v. McMillian, 503 U.S. at 9-10 (concluding that bruises, swelling, loosened teeth, and a cracked dental plate were not *de minimis* for Eighth Amendment purposes).  While a serious injury is not necessary, it is clear from Hudson that some actual injury is required in order to state an Eighth Amendment violation.

In viewing the facts in the light most favorable to the Plaintiff in order to determine if excessive force was used, it is highly relevant that the medical records show that Plaintiff did not suffer any injury.  With respect to the claims at bar, no reasonable juror could accept Plaintiff's claims as true without some evidence of some injury.  In this regard, Plaintiff claims that Defendants beat him for three to four minutes and that his head was hit so hard that he passed out.  No reasonable juror could conclude that such activity occurred without some evidence of abrasion, bruising or

swelling; none of which is evident from Plaintiff's medical records. Put simply, Plaintiff has failed to submit any evidence to substantiate his version of the events except his own self-serving statements. To allow him to defeat summary judgment on such a record would open the door to all prisoners making such unsubstantiated allegations to get a day in court.

        4.    <u>The extent of the threat to safety of staff and inmate and efforts made to temper the severity of the forceful response.</u>

Defendants have provided evidence that there was a danger to staff when they were escorting Plaintiff back to his cell from his shower. Plaintiff argues that he posed no threat to Defendants at any time. Plaintiff's averment in this regard, however, without any evidentiary support to bolster it, is not sufficient to defeat Defendants' motion for summary judgment. *Accord* <u>Brown v. Terry</u>, 469 F.Supp.2d 256, 261 (D. Del. 2007) (holding that Plaintiff presented no evidence from which a reasonable trier of fact could conclude that force was used maliciously and sadistically for the very purpose of causing harm); <u>Ritchie v. Erie County Prison</u>, 2005 WL 3019128, *5 (W.D.Pa. Oct. 26, 2005) (same).

The factors listed above, viewed in the light most favorable to Plaintiff, weigh in favor of the Defendants. To this extent, Defendants have provided evidence that demonstrates that there was a need for the application of force due to Plaintiff's resistance; that the relationship between the need for force and the

amount of force used was commensurate; that Plaintiff did not sustain any injury as a result of the incident; and that Defendants tempered the severity of the force used to escort Plaintiff. Plaintiff has not provided any evidence to the contrary as is his burden in the face of a motion for summary judgment by the opposing party. Stated differently, the evidence Plaintiff has put forth to meet the standard of "cruel and unusual punishment" with malicious and sadistic intent under the Eight Amendment is insufficient here. Given the situation, this Court recommends a finding that Defendants' actions were not constitutionally unreasonable. Therefore, Defendants' motion for summary judgment should be granted as to this claim.

### E. The September 26, 2002 Incident

Plaintiff's sole excessive force claim on this date is that Defendant King pulled on the security tether that was attached to Plaintiff and that he tightened Plaintiff's handcuffs. The record evidence as to this claim is as follows. At approximately 5:00 PM on September 26, 2002 Plaintiff was informed by Defendant Durco to prepare for escort to the law library. When Defendant King attempted to handcuff him, Plaintiff told Defendant Durco that King was not supposed to be anywhere near him. Durio told him that if he did not let King handcuff him, he was not going to the library. Plaintiff alleges that King pulled on the security rope and tightened the handcuffs as he escorted Plaintiff to the library.

13

After Plaintiff was locked in, he yelled to Durio to get him out of there.  Defendant Durco informed Plaintiff that he would have to stay in the law library for a half an hour while Durco went to "chow."  In response, Plaintiff yelled out "fuck that get me out now." (See doc. no. 70-3, p.41).  Defendant Durco repeated that he would be back in a half hour, to which Plaintiff stated "I'm going to fuck you up when you come back." *Id*.  Defendant King and Officers Moore and Morris overheard this exchange between Plaintiff and Defendant Durco.  The Lieutenant on duty, Lt. Werner, was notified of Plaintiff's threat.  Upon defendant Durco's return from eating dinner, Defendant Durco, Defendant King, Officer Morris, and Lt. Werner escorted Plaintiff back to his cell.  As a result of his actions, Plaintiff was issued misconduct number A098916 by defendant Durco charging him with "Threatening an Employee" and "Using Abusive, Obscene Language."  A hearing was conducted on September 30, 2002 at which Plaintiff personally testified (doc. no. 70-3, p. 43).  The Hearing Examiner concluded that there was sufficient evidence against Plaintiff, found Plaintiff guilty of the misconduct charges, and sentenced him to 30 days disciplinary custody.  This decision was upheld on appeal by the Prison Review Committee.

Even if proven to be true and for no necessary purpose, Defendant King's alleged conduct, although uncivil, does not meet the Constitutional standard for a claim of a malicious and sadistic use of force "repugnant to the conscience of mankind." <u>Whitley</u>, 475

14

U.S. at 327.  As stated above, the Supreme Court has cautioned that a line must be drawn between actionable excessive force claims and other "malevolent" conduct that does not implicate the United States Constitution.  Hudson, 503 U.S. at 7.  Thus, Plaintiff's allegations, even if true, do not satisfy the test for a Constitutional violation.  *Accord* Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005) (allegations of de minimis physical harm from handcuffing were insufficient to demonstrate excessive force).  Accordingly, summary judgment should be granted in favor of Defendants as to this claim.

### F. Defendants Ball, Negley, Capozza and Durco

Plaintiff further seeks to hold Defendants Capozza, Ball, Negley and Durio liable based on their alleged failure to properly train and/or supervise Defendants King, Orenbaun and Connor.  With regard to supervisory liability, the Court of Appeals for the Third Circuit set forth the standard for imposing liability against a supervisor under § 1983 in Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989).  Relying on the precepts set forth by the United States Supreme Court in City of Canton v. Harris, 489 U.S. 378 (1989), the Sample court noted that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person'–whether a natural one or a municipality–has exhibited deliberate indifference to the plight of the person deprived." Sample, 885 F.2d at 1117-18. The Court continued that in order to

15

establish supervisory liability, the plaintiff must identify a specific supervisory practice or procedure that the defendant failed to employ, that the existing custom or practice without that specific practice or procedure created an unreasonable risk of harm, that defendant was aware that this unreasonable risk existed, that defendant was indifferent to that risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice or procedure. *Id*. at 1118. As to causation, the <u>Sample</u> court concluded as follows:

> On remand, the district court should bear in mind that under the teachings of City of Canton it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [plaintiff] identify specifically what it is that [defendant] failed to do that evidences his deliberate indifference. Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the "identified deficiency" and the "ultimate injury."

<u>Sample</u>, 885 F.2d at 1118.

Similarly, to establish liability on a failure to train theory, Plaintiff must set forth specific allegations that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205, 216 (3d Cir. 2001) (citing <u>City</u>

of Canton, 489 U.S. at 390, 109 S.Ct. 1197).

In the case at bar, Plaintiff has presented no evidence to demonstrate that his alleged injuries resulted from deliberate indifference. Specifically, he has not identified any specific training, supervision or disciplinary actions that were deficient.[1] Nor has he established that training, supervision and/or discipline were not provided to the correctional personnel who were present during the incidents. Moreover, he fails to make any specific factual allegations that the supervisors are liable based on a policy or custom of tolerating inmate abuses. Specifically, he does not allege that Defendants Ball, Negley, Capozza or Durco were informed of any other instances of allegations of inmate attacks by Defendants King, Orenbaun or Connor. Nor does he allege that any valid complaints alleging inmate attacks have been filed against Defendants King, Orenbaun or Connor. Nor has he established that proper training, supervision and/or discipline were not provided to Defendants King, Orenbaun or Connor. Finally, he fails to allege that any similar conduct has occurred in the past such that any supervisory personnel should have been aware that an unreasonable risk of harm existed. See Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("the record before us is critically deficient of

---

[1] See DiJoseph v. City of Philadelphia, 947 F. Supp. 834 (E.D. Pa. 1996) (failure to demonstrate any inadequacy in the police training program resulted in dismissal of section 1983 claim against city), aff'd, 156 F.3d 1224 (3d Cir. 1998).

evidence on which a jury reasonably could have based its conclusion that [the municipality] was deliberately indifferent to the need to train . . . and that this failure to train was the actual cause of the plaintiffs' injuries.").

After reviewing the record and giving Plaintiff the benefit of all inferences drawn from the facts, it is clear that Plaintiff has failed to present evidence that Defendants Ball, Negley, Durco and/or Capozza were deliberately indifferent toward Plaintiff or tacitly approved any correctional guard's unlawful conduct. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims against supervisors Ball, Negley, Durco and Capozza.

### G. Defendant Durco

It further appears that Plaintiff may be seeking to hold Defendant Durco liable for failing to intervene in the September 26, 2002 episode where Defendant King pulled on his tether and handcuffs. In this regard, the Court notes that the Court of Appeals for the Third Circuit has held that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). However, an officer is only liable if there is a realistic and reasonable opportunity to intervene. Byrd v. Brishke, 466 F.2d 6,

18

11 (7th Cir. 1972) (holding that liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); <u>Putman v. Gerloff</u>, 639 F.2d 415, 423 (8th Cir. 1981) (holding that liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer).

Here, Plaintiff has not submitted any evidence that Defendant Durco even was aware of Defendant King's alleged actions in pulling on the tether and tightening the handcuffs. Consequently, Defendant Durco is entitled to summary judgment as to this claim.

**CONCLUSION**

It is respectfully recommended that the Defendants' Motion for Summary Judgment (doc. no. 70) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. §636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Lisa Pupo Lenihan
United States Magistrate Judge

Dated: October 30, 2007

19

```
cc:  Honorable Nora Barry Fischer
     United States District Judge

     Robert R. Porter
     DU-6434
     SCI Camp Hill
     P.O. Box 200
     Camp Hill, PA 17001
```